## GUMAER *v.* COLORADO OIL COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

No. 50. Argued October 24, 1893. — Decided March 5, 1894.

The court being unable, in any view that it can take of the evidence, to reconcile the conflicting testimony of the witnesses respectively examined in behalf of the parties, holds that the evidence fails to show that the complainant is entitled to the relief prayed for.

THE Colorado Oil Company, describing itself as a corporation organized and existing under the laws of New York, brought its bill in equity in the Circuit Court of the United

States for the District of Colorado, on June 15, 1887, against Augustus R. Gumaer, a citizen of Colorado, and the Florence Oil Company, of that State, praying for an injunction to restrain the defendant Gumaer from assigning or encumbering a certain leasehold estate, with certain rights and privileges thereto annexed, and to restrain the defendants and each of them from consuming any oil, gas, metal, or mineral from the leasehold premises, or disturbing the complainant's possession thereof, or destroying its property thereon. The court entered an order on the following day, restraining the defendants from doing any of the acts which the complainant sought to have enjoined until the 27th of the same month, the day set for a hearing of the cause. On that day it was ordered, in accordance with the stipulation of counsel, that the restraining order should remain in force until the final hearing, and that the defendants should answer to the merits on or before September 15, 1887. On the 12th of that month the defendant Gumaer filed his answer, and on the 3d of the following month the company filed a formal replication thereto.

A judgment *pro confesso* against the Florence Oil Company was entered on February 6, 1888. The cause as against Gumaer was heard in the said court upon bill, answer, and evidence, and, on December 22, 1888, the court entered a final decree embodying the relief by injunction prayed for in the bill, and ordering that a lease from Stephen J. Tanner to Gumaer, dated October 6, 1886, be surrendered and delivered, for the use of the complainant, into the office of the clerk of the court, and that two other leases, dated respectively October 12, 1886, and December 20, 1886, by which it appeared that Gumaer had granted and demised certain parts of the property to the company, be cancelled and annulled, and all parties thereto be relieved from the conditions thereof. The defendants appealed from that decree to this court.

*Mr. Thomas M. Patterson* for appellant.

*Mr. E. T. Wells, Mr. R. T. McNeal,* and *Mr. John G. Taylor,* for appellee, submitted on their brief.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

The Colorado Oil Company, a corporation organized under the laws of the State of New York, and whose purpose was to mine, produce, refine, and deal in petroleum and its products, procured from the owners of lands, situated in the county of Fremont and State of Colorado, leases authorizing said company to sink wells on such lands and to extract oil therefrom. On or about the 13th day of July, 1886, the company appointed Augustus R. Gumaer, then a resident of Cañon City, Colorado, its general manager in that State.

Gumaer acted as general manager of the company until December 21, 1886, when his resignation was accepted by the company, through its vice-president, in a letter containing the following terms: "In accepting your resignation as general manager of the Colorado Oil Company for Colorado, I beg to express to you the regrets of the company and myself in losing your valuable services. You accepted the position when the company was in a precarious condition. Under your able management, its affairs to-day are in a much different condition, and prospects brighter than ever. I beg to express to you, for the company and myself, our thanks for the interest which you have taken in our affairs; and I beg to express the wish that our friendly relations may always continue."

On the 15th day of June, 1887, the Colorado Oil Company filed a bill of complaint against Gumaer and the Florence Oil Company, in which it sought to have Gumaer declared a trustee for it as to a certain lease for oil lands in Fremont County, which had been granted by one Stephen J. Tanner to Gumaer in his own name, but in such circumstances as that in equity it was the property of the company. The bill further alleged that certain leases of portions of the Tanner tract, subsequently executed by Gumaer to the Colorado Oil Company, were in fraud of the company's rights in the entire tract, and intended to operate as a fraud and deceit. It was also alleged that the Florence Oil Company, organized and controlled by Gumaer, had entered into possession of a part of the tract.

A decree *pro confesso* was taken against the Florence Oil Company. Gumaer answered, averring that the lease by Tanner to him was in his own right, and not as trustee, and that the leases of portions of the tract to the complainant had been made in good faith, and were binding, and that the rights of the complainant in the Tanner tract were limited and defined by those leases.

The cause was put at issue, and a large amount of evidence was put in by both parties. The result in the court below was a decree in favor of the complainant, declaring that Gumaer had taken the Tanner lease in trust for the complainant company, and commanding the defendant to surrender and assign the same to the complainant, and also to surrender the leases made by Gumaer, of portions of said tract, to be cancelled.

We are compelled to pass upon this case without the assistance of any opinion or findings of facts by the court below, and hence it has been necessary for us to consider all the evidence. The bill is definite and precise in its allegations, and waives answer under oath. The answer, although without weight as evidence, is also precise and specific in its allegations denying the equity of the bill.

There is no view that we can take of the evidence that enables us to reconcile the conflicting testimony of the witnesses respectively examined in behalf of the parties.

The principal witnesses who testified in behalf of the complainant were Jacob Wallace, president; Isaiah Josephi, vice-president, and Simeon E. Josephi, brother of Isaiah, and who succeeded Gumaer as manager of the company. Their testimony sustained in substance the allegations of the bill.

These witnesses were confronted by Stephen J. Tanner, the owner of the tract in question; by Samuel H. Baker, who had acted as attorney for Gumaer, and also, for a part of the time, as attorney for the company, and by Gumaer himself; and their testimony is, in essential particulars, directly contradictory to that given by the complainant's witnesses.

The principal matter in controversy is, whether Gumaer took the lease from Tanner for himself, or whether he took it

in circumstances that, in equity, prevent him from asserting his personal ownership of it against the company.

It was shown that the lease of Tanner to Gumaer was dated October 6, 1886, and when the latter was acting as general manager of the company, and it was claimed that he procured the lease by representing to Tanner that he was taking it for the company. It was testified by Wallace that he had, as president, directed Gumaer to procure additional leases, and particularly of the Tanner tract. He denied that Gumaer had informed him, before he agreed to become manager, that he had a contract of any kind with Tanner, and he denied that Gumaer had ever pretended to own a lease from Tanner. He also denied that Isaiah Josephi, the vice-president, had been authorized by the company to accept leases from Gumaer of portions of the Tanner tract.

Simeon Josephi testified that Tanner had told him that he had given Gumaer a lease, knowing him to be the general manager of the Colorado Oil Company, and believing that the company would carry out the conditions of the lease; that when Isaiah Josephi came to Colorado in December, 1886, and had learned that Gumaer held a lease from Tanner, he demanded that it be turned over to the company; and that, on Gumaer's refusal to turn over the Tanner lease, Josephi had, in order to avoid jeoparding the fixtures and property of the company that were on certain portions of the Tanner tract, accepted leases from Gumaer of such portions.

Isaiah Josephi testified that he had accepted the leases from Gumaer under protest.

On behalf of the defendants it was shown that while it was true that the lease from Tanner to Gumaer was executed on October 6, 1886, after he had been appointed manager, yet that it was given in pursuance of a contract in writing between Tanner and Gumaer, dated December 10, 1885, long before he had any connection with the company, which contract gave an option to Gumaer to purchase the tract.

Tanner testified to the existence of the contract of December 10, 1885, between himself and Gumaer, and also that he made the lease of October 6, 1886, to Gumaer directly, with-

out any reference to the Colorado Oil Company, believing that he was able to execute the terms of the lease which required him to enter upon the land and commence operations within ten days.

Gumaer testified that he had a contract with Tanner, and also with other parties, before he was appointed manager of the Colorado Company; that he had informed Wallace, the president, of his option for the Tanner tract before he was so appointed; that he subsequently offered to give an interest in the tract to the company on certain terms. He denied that he had ever received any instructions, either orally or in writing, from the company to get for it any interest in the Tanner lands. He also testified that he gave the leases to the Colorado Oil Company of certain parts of the Tanner tract, after a conference with Isaiah Josephi, the vice-president, in full and satisfactory settlement.

Samuel H. Baker, who was then acting as the company's attorney, testified that he had learned from Wallace that Gumaer had explained to him about Gumaer's connection with the Tanner lands. He also testified that he was present at the settlement between Gumaer and Josephi, vice-president, and that the lease from Gumaer to the company was given for " the purpose of adjusting a small difference between the company and Gumaer, and was received by the company as a sort of compromise and settlement."

It must be apparent, from this brief statement of the testimony of these witnesses, that the principal matters on which the complainant's right to relief depends are left in doubt and uncertainty.

Nor are our doubts resolved in favor of the complainant, when we turn from the irreconcilable statements of the witnesses to the letters and telegraphic messages that passed between Gumaer and Wallace, president of the company. On the contrary, the impression made upon our minds by their perusal is favorable to the defendants.

Thus, on August 21, 1886, Gumaer wrote a letter to Wallace, in which he distinctly adverts to his option on the Tanner tract, and says: "My option does not expire before the middle

of December, but I want to call your attention to the fact that time is passing by, and after we see the result of No. 5, something must be done. I am confident that I can handle it with Denver parties, but, as promised, I will give you first chance."

In letter dated October 3, 1886, he wrote: "I will make this proposition to the company: If you will sink one well immediately, one within a year and three more within the second and third years, I will give you the right to put the five wells on the one hundred and sixty acre lease that belongs to me, at one-eighth royalty, and in such places as you may select from time to time; however, this lease will not prohibit me from leasing or sinking other wells on said lease." This was followed by a telegraphic dispatch, dated October 7, as follows:

"To JACOB WALLACE, President, 304 Greenwood Street, New York:

"Six down five hundred feet. Ignore my proposition third: make new one to-day.

"A. R. GUMAER, *General Manager.*"

A letter of the same date read as follows:

"CAÑON CITY, COL., *Oct. 7th,* 1886.

"JACOB WALLACE, Esq., President.

"I wired you to ignore my proposition of the 3d, and that see new one which I make, viz.:

"If you will drill two wells on Tanner tract, adjoining McCandless lease, say one in pumping distance from No. 6 and the other east side of said tract, and commence derrick for third rig, I will give you forty acres of the McCandless lease, all, at one-eighth royalty; that is to say, the three wells' product and the forty acres, all for one-eighth royalty.

"You are not required to do any work on the forty-acre tract; both leases are given for twenty years, or as long as oil is found in paying quantities. . . .

"You understand, these are lands I have held options on before I acted for the company. I consider this very valuable territory, and I cannot get you as favorable a lease, considering

location, from any one. . . . Please wire me on receipt of this whether to go on with the work under the above proposed lease. . . . I will get ready, so that work can be pushed rapidly upon hearing from you. Do not fail to wire."

On October 11, Wallace sent the following dispatch :

"A. R. GUMAER, G. M., Cañon City, Colo.

"Without consulting ·trustees cannot consent to lease at more than one-tenth royalty.

"JACOB WALLACE, *President.*"

Upon October 12, Gumaer telegraphed Wallace as follows: "I accept proposition, one-tenth ; have commenced work."

In this condition of affairs, Gumaer erected the derricks and fixtures on those portions of the Tanner tract which subsequently he leased to the company when he went out of their service.

This, and other correspondence which it is unnecessary to quote, seems to strongly corroborate Gumaer's version of these transactions. While it is true that the Tanner lease was executed after Gumaer's appointment as manager, it was fairly an exercise of the option to purchase given him previously. Wallace's allegation that he had instructed Gumaer to secure leases of the Tanner property is squarely denied by Gumaer. It was claimed that the company had given Gumaer a general power of attorney, authorizing him to make contracts and purchases, but the power, when produced, discloses that it merely authorized him to take such steps as were necessary in defending the company against a pending suit.

Upon the whole, our examination of the evidence fails to convince us that the complainant is entitled to the relief prayed for.

*We, therefore, remand the case to the court below, with directions to set aside the decree and dismiss the bill.*